# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVANA GIANELLO,<br><br>　　　　　Petitioner,<br>vs.<br><br>ERIC HOLDER, JR.,<br><br>　　　　　Respondent. | CASE NO. 11CV0180-LAB (JMA)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Silvana Gianello, a prisoner in federal custody, proceeding *pro se*, filed her petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court ordered Respondent to show cause why the petition should not be granted, and the petition is now fully briefed.

Gianello is a Uruguayan national. In August of 2007, she entered the United States without inspection, and remained here for seven months. On May 29, 2008, she attempted to enter the United States from Mexico by presenting false documents. She was placed in removal proceedings, and on July 16, 2008, she was removed to Uruguay. At the time, she did not mention any fear of returning there. Then on April 1, 2009, she again attempted to enter the United States in the same way. After she was placed in expedited removal proceedings, she made an asylum claim. Her claim was denied and a stay of removal was also denied. The Department of Homeland Security (DHS) determined that she was a flight risk, and held her in custody pending removal.

**Gianello's Claims**

Gianello's petition requests a stay of removal, relief from the removal order, and release from custody on parole. In his return to the petition, Respondent argues that the only live claim is her request that the Court review DHS's denial of parole, and that the others were all rendered moot or unripe when the Ninth Circuit remanded her petition to the BIA for review, and granted a stay of removal pending the BIA's decision. Respondent argues that the REAL ID Act precludes the Court from reviewing the denial of parole, and that even if review were authorized, Gianello fails to raise an adequate challenge and the denial was legitimate and adequately supported.

In her traverse, Gianello admits her claims were remanded to the BIA, and argues only that she should be released on parole. (*See, e.g.*, Traverse (Docket no. 11) at 8[1] (asking the Court to review DHS's denial of parole, and voicing complaints about DHS officials' handling of that decision)).  While it is not very clearly written or organized, it appears to focus solely on the hearing at which she was denied parole and the DHS officials involved, and raises numerous complaints about the proceedings and outcome.[2] It attaches numerous documents pertaining to Gianello's detention and asylum claims, but merely attaching documents is not the same as raising claims or making arguments.[3]  And it does not address Respondent's argument concerning mootness or unripeness of other claims.

---

[1] The Traverse is not consecutively paginated. It begins with an 8-page introductory document outlining Gianello's arguments, followed by two pages of exhibits, followed by twelve more pages in which the page numbering restarts at 1. This is followed by an index, purportedly identifying thirteen attached exhibits, some of which are unnumbered and some of which have their own pagination that is not consecutive with the Traverse's. For clarity and convenience, this order will cite to the page numbers generated by the Court's CM/ECF system.

[2] These are the only claims brought by Gianello that the traverse discusses. It also spends a good deal of time focusing on issues not implicated here, such as the appropriateness of a stay of removal (Traverse at 7), improper denial of her asylum request (*Id.* at 11), and the standards for class certification. (*Id.* at 19–21.)

[3] It is common for *pro se* litigants to attach all documents they think might be relevant in some way. Doing so isn't a sufficient way to raise all potential issues or claims that might arise out of or be related to those documents, though, because that would require the Court to overstep its role as neutral arbiter. "The courts cannot assume the role of advocates and create arguments never made." *Donahue v. United States*, 660 F.3d 523, 524 (1st Cir. 2011). *See also Jacobson v. Filler*, 790 F.2d 1362, 1364–66 (9th Cir. 1986)).

Gianello later supplemented the Traverse, but the supplementary materials don't address these issues either. If later events rendered Gianello's claims ripe or non-moot in some way, she has not brought this to the Court's attention.

The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has subject matter jurisdiction to grant the relief requested. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because Respondent raised the jurisdictional issues of unripeness and mootness, and Gianello didn't rebut this argument in any way, the Court accepts that the only live claim the petition raises is whether she is entitled to parole pending deportation.

**Discussion**

Under 8 U.S.C. § 1225(b)(1)(B)(ii), DHS has authority to detain arriving aliens, which here includes Gianello. Under 8 U.S.C. § 1182(d)(5)(A), DHS has discretionary authority to grant parole to asylum applicants, and this includes arriving aliens. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007). Discretionary decisions are, generally speaking, beyond the scope of habeas review. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (citing 8 U.S.C. § 1226(e)). But the Court does have jurisdiction to entertain claims that denial of parole was unconstitutional (because of due process violations, for example) or violated some federal statute. *Id.* In other words, the question before the Court is not whether the Court agrees with the denial of parole or would have made the same decision itself, but whether the denial was unconstitutional or otherwise illegal.

Importantly, denial of parole and denial of bond to Gianello are separate matters.[4] The government's return correctly points out that the petition only attempts to appeal the

---

[4] Initially, the DHS's parole denial noted that an "alternative to detention" program was available, and thus no bond was needed. (Return, Ex. at 52.) She later made a request for review of DHS's bond denial, but the immigration judge denied this, noting that he had no authority to conduct such a review. (Return, Ex. 71, 74–75 (memorandum, citing 8 C.F.R. § 1003.19(h)(2)(i)(B)).) The Bureau of Immigration Appeals, however, did consider her bond request, distinguished *Casas-Castrillon* on the basis that it did not apply to arriving aliens such as Gianello, and denied the appeal. (Return, Ex. 86–87.) While the basis for this decision is questionable, *see Centeno-Ortiz v. Culley*, 2012 WL 170123 (S.D.Cal., Jan. 19, 2012) (rejecting government's argument that *Casas-Castrillon* does not apply to arriving aliens), Gianello has not appealed this decision.

former, not the latter. (Return at 5:21, 7 n.4; Pet. at 4.) Even after having this pointed out to her, Gianello expressed no disagreement with the government's characterization of the petition. She argues that denial of parole was an abuse of discretion (Traverse at 4, 8, 12), and that several non-adjudicative officers properly conducted their investigations made in connection with her parole and asylum claims.[5] Consequently, this order does not consider whether bond should have been denied, nor whether Gianello might be able to file a successive petition arising from her continued detention.

The government points out that because determinations of flight risk involve the weighing of factors and are discretionary, they are beyond the scope of ordinary habeas review. *See Singh*, 351 F.3d at 439. And even if Gianello could articulate a due process challenge, the government argues, immigration officials need only rely on a "facially legitimate and bona fide reason" for denying parole. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006). If officials do advance such a reason, "the denial of parole is essentially unreviewable." *Id*.

The government argues this standard was met by evidence showing that Gianello has no fixed address, family ties, or employment history in the United States; that she had entered without inspection; that in 2008 and 2009 she presented fraudulent documents to DHS officials in an effort to slip into the United States; and that in a sworn statement given April 1, 2009, she concealed the fact of her 2007 arrest and domestic violence conviction of an infraction under Cal. Penal Code § 415.

This is nearly, but not quite correct. The DHS's initial denial (Return, Ex. at 50–52) was based on findings that Gianello lacked substantial community ties, and that she was a flight risk (though not a danger to the community.) This was supported by findings that the officer tried numerous times to contact her sponsor but could not do so, that Gianello posed as a different person and gave false documents in an effort to enter the country, and that her "story had a lot of [inconsistencies] and [she] continued to be deceitful even after advised

---

[5] These include deportation officer Hernandez, whose report was used in making the parole decision. (*See* Return at 52; Traverse at 3–5), and immigration officers Leyva and Abend, who reviewed a report later submitted to the BIA. (Traverse at 8; Return at 84.)

to tell the truth." (*Id.*) The officer did not rely on Gianello's concealment of her arrest, and in fact, the record shows Gianello did disclose her arrest for domestic violence.[6] These are the types of factors immigration authorities properly look to when determining whether a subject is a flight risk, *see Singh v. Holder*, 638 F.3d 1196, 1206 and n.5 (9th Cir. 2011) (citing *Matter of Guerra*, 24 I & N. Dec. 37, 40 (B.I.A.. 2006)), and here they are powerful.

Here, DHS officials advanced multiple legitimate and bona fide reasons, which are consistent with the record, for determining that Gianello was a flight risk and for denying parole. Six of the nine *Guerra* factors—her lack of a fixed address in the United States, her non-residency in the United States, her lack of family ties in the United States, her lack of employment in the United States, her history of immigration violations, and her manner of entry into the United States—all tend to show she is a flight risk. The other factors all either appear to be inapplicable, neutral, or otherwise unhelpful to her.

Gianello cites *Akinmade v. I.N.S.*, 196 F.3d 951 (9th Cir. 1999) in support of her argument that use of false documents or lies made to immigration cannot be held against her, but this is an inapt citation. *Akinmade* did not deal with flight risk, but rather with an adverse credibility determination in an asylum determination, made on the basis of an applicant's use of a false passport and false declarations. *Id*. at 955. That opinion pointed out that false statements about nationality, <u>by themselves</u>, are not reason to doubt an asylum-seeker's credibility, because "a genuine refugee escaping persecution may lie about his citizenship to immigration officials in order to flee his place of persecution or secure entry into the United States." *Id*. Compare *Yeimane-Berhe v. Ashcroft*, 393 F.3d 907, 911 (9th Cir. 2004) (citing *Akinmade*) ("[T]he use of a fraudulent document may, considering the totality of the record, lend support to an adverse credibility finding . . . .")

---

[6] It may be that the government assumed this was one of the inconsistencies or omissions. But in fact, the record is replete with examples of her inconsistent or incomplete statements. For example, she stated under oath that she had lived in Los Angeles for about 7 years. (Return, Ex. 21.) The immigration judge, however, was told that the longest she had remained in the United States was for seven months, in 2007 and 2008. (*Id*., 61.) The immigration judge found that her two children live in Uruguay. (*Id*., 60.) But she told immigration officers she had a daughter living in Reseda, California (*Id*., 82) In her traverse, and the documentation supporting it, she represents that she has children and grandchildren living in Los Angeles. (Traverse at 12; Traverse Exhibits at 7, 56 (letters of support).)

1      But when determining whether a person is a flight risk, that person's past immigration
2 violations, manner of entry into the United States, and attempts to evade authorities are all
3 *Guerra* factors, and as such are properly considered. Gianello's history of immigration
4 violations is well documented and very unfavorable. (*See* Return, Ex. 61 (describing
5 Gianello's 2007 and 2008 illegal entries).) Furthermore, her statements under oath to
6 immigration authorities are both materially inconsistent and implausible. As an example, on
7 April 1, 2009, the day of her latest apprehension, she claimed she didn't know it was illegal
8 for her to use a fake entry card to get into the United States.

> Q: I now present to you this document (DSP-150 Card MXT000036184). Did you present this document in an attempt to gain admission into the United States?
> A: Yes.
>
> Q: At the time that you presented this document to the inspecting officer, were you aware that this document is not a legal document for you to use?
> A: No.
>
> Q: Is the picture in the DSP-150 card your true identity?
> A: No.
>
> Q: Is the date of birth in the DSP-150 your true DOB?
> A: No.
>
> Q: How much did you pay or would you pay for this document?
> A: I was going to pay 500.00 U.S. dollars.
>
> Q: Do you know the person that sold you the document?
> A: No.
>
> Q. Did you know it was against the laws of the United States Immigration and Nationality Act to attempt to enter in the manner that you did, knowing you have no legal documents to enter or reside in the United States?
> A: No.

22 (Return, Ex. 20–21.) She later testified that she had *not* bought the fake card and never tried
23 to use it, claiming she had attempted to slip past the pedestrian checkpoint and elude the
24 officer without presenting the card. (*Id.*, Ex. 61–62 (Immigration Judge's Decision).)
25      The traverse claims investigators called her sponsor (who she says was her boyfriend
26 or fiancé) in an effort to confirm her story that she would have a place to live in the U.S., but
27 that they called him at the wrong times, were rude to her, and wouldn't listen to her
28 explanations why he wasn't answering. (Traverse at 3.) She attaches documentation from

him showing he has offered to support her for several months and provide her a place to stay. (Traverse Exhibits (Docket no. 11-1), at 2–7). But even if she had presented evidence that their investigation was not as effective or polite as she thinks it should have been, it doesn't render the government's decision illegitimate or invalid.

**Conclusion and Order**

In short it is clear that the denial of parole was supported by facially legitimate and bona fide reasons, and did not amount to an abuse of discretion or violation of due process. The petition is **DENIED** and a certificate of appealability is also **DENIED**.

**IT IS SO ORDERED**.

DATED: March 23, 2014

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge